# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 18-0865V
NOT TO BE PUBLISHED

| | |
|---|---|
| DONNA SKWIAT,<br><br>                 Petitioner,<br>v.<br><br>SECRETARY OF HEALTH<br>AND HUMAN SERVICES,<br><br>                 Respondent. | Chief Special Master Corcoran<br><br>Filed: June 12, 2020<br><br>Attorney's Fees and Costs;<br>Reasonable Basis; Special<br>Processing Unit ("SPU") |

*Bridget Candace McCullough*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Debra A. Filteau Begley*, U.S. Department of Justice, Washington, DC, for Respondent.

**DECISION DENYING ATTORNEY'S FEES AND COSTS**[1]

On June 19, 2018, Donna Skwiat filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa–10, *et seq*.[2] (the "Vaccine Act" or "Program"). Petitioner alleged that she suffered left shoulder injuries related to vaccine administration ("SIRVA") caused in fact by the influenza vaccine she received on November 3, 2015. Petition at 1, ¶¶ 2, 15.

In her affidavit, Petitioner asserted that "[a]t the time [she] received the influenza vaccination, [she] had no history of shoulder injuries." Exhibit 6 at ¶ 3. However, the medical records filed with the Petition indicated Ms. Skwiat was seen twice in 2014 for

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  **This means the decision will be available to anyone with access to the internet.**  In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

1

left shoulder pain, along with back and left knee pain and swelling in her knee experienced since a motor vehicle accident in 2010. Exhibit 2 at 16-20. Additional medical records provided further evidence of Petitioner's earlier left shoulder issues, along with no evidence that these issues had resolved prior to vaccination. Petitioner filed a motion to dismiss her claim on October 1, 2019, and a Decision was issued a few days later. ECF Nos. 30-31.

On November 22, 2019, Petitioner filed a motion seeking $9,440.10 in attorney's fees and $922.75 in costs. Petitioner's Application for Attorneys' Fees ("Motion"), ECF No. 35. Respondent opposes Petitioner's request. Respondent's Opposition to Motion ("Opp."), ECF No. 39.

I find that Petitioner has failed to establish that her claim possessed sufficient reasonable basis. Thus, Petitioner is not entitled to an award of attorney's fees and costs.

### I.      Procedural History

As the filed billing records reveal, Petitioner first contacted the law firm of Petitioner's counsel, Muller Brazil, LLP, more than a year before the petition was filed. Motion at 6. On May 4, 2017, one of the named partners at the firm, Paul Brazil, reviewed Petitioner's intake form and prepared a file memorandum. *Id.*

During the subsequent nine months, paralegals collected Petitioner's primary care provider ("PCP") records from three years prior to vaccination to the present, and orthopedic and physical therapy ("PT") records from post-vaccination medical treatment of her alleged left shoulder injury. Motion at 6; *see* Exhibits 1-5 (medical records identified in billing records). Mr. Brazil performed a comprehensive review of the case and prepared a memorandum on January 31, 2018. Motion at 6. Thereafter, a paralegal prepared a request for medical records from Advanced PT of Freehold, New Jersey. *Id.*; *see* Exhibit 7 (later filed record from the only visit on April 8, 2016).

On June 6, 2018, Petitioner's counsel of record, Bridget McCullough, reviewed the medical records and prepared the Petition. Motion at 6-7. Over the next two weeks, she prepared Petitioner's affidavit and obtained additional documentation regarding vaccination. *Id.* at 7. The Petition, vaccine record, collected medical records, and affidavit were filed on June 19, 2018. Petition and Exhibits 1-7, ECF No. 1. A statement of completion was filed on June 20, 2018. ECF No. 5. All of the above demonstrates that substantial work was performed on this matter for more than a year before its filing.

The medical records obtained in this case, and filed early in its life, revealed immediate problems with the claim. Records from Petitioner's PCP show that she sought medical treatment for pain in her back, left shoulder, and knee and swelling in her knee on two occasions during 2014. On April 29, 2014, she was seen for swelling in her knee and left shoulder and back pain. Exhibit 2 at 19. She was referred to an orthopedist and prescribed Vimovo[3] and Percocet.[4] Exhibit 2 at 20. Approximately five months later, Petitioner returned to her PCP, complaining of chronic pain in her hip, back, shoulder, and knee from a motor vehicle injury in 2010. *Id.* at 16. The record from this visit indicates she was "on disability" and was "followed by ortho". *Id.* Despite this evidence, Petitioner executed and filed an affidavit indicating she had no prior left shoulder issues. Exhibit 6 at ¶ 3. From the billing records, it appears no attempt was made to obtain medical records from any orthopedic treatment and PT undergone by Petitioner in 2014 or documentation regarding her disability claim. Motion at 6-7.

The parties discussed the evidence of prior left shoulder pain during the initial status conference held on July 24, 2018. *See* Order, issued July 30, 2018, at 1, ECF No. 8. Also mentioned was Petitioner's failure to report any post-vaccination left shoulder pain at the first post-vaccination visit to her PCP on January 15, 2016. *Id.* at 1-2; *see* Exhibit 2 at 7-9 (record from the PCP visit).

In September 2018, Petitioner filed a status report indicating that Petitioner's prior orthopedist, Dr, Morales at Shore Sports Medicine, who treated her left shoulder pain in 2014, had been convicted of and incarcerated for accepting kickbacks and engaging in healthcare fraud and that the medical records from his practice had been shredded. ECF No. 9. She filed supporting documentation, a second affidavit, and an affidavit from her husband. Exhibits 8-11, ECF Nos. 9-10.

In response, Respondent filed a status report requesting all prior medical records, records from the Social Security Administration, and a benefits statement listing any amounts paid by health insurers for Petitioner's care during the three years prior to vaccination. ECF No. 12. Respondent suggested that Petitioner's counsel continue her efforts to obtain Dr. Morales's medical records which, by order of the New Jersey State Board of Medical Examiners, should have been provided to his patients or transferred to

---

[3] Vimovo is described as "a prescription medicine used in adults and adolescents . . . who need to take naproxen for relief of symptoms of arthritis and who also need to decrease the risk of developing stomach ulcers caused by naproxen." https://www.vimovo.com (last visited on June 3, 2020). Naproxen is "a nonsteroidal anti-inflammatory drug that is a propionic derivative, used in the treatment of pain, inflammation, osteoarthritis, rheumatoid arthritis," and other conditions. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY ("DORLAND'S") at 1232 (32nd ed. 2012).

[4] Percocet is the "trademark for a combination of oxycodone hydrochloride and acetaminophen." DORLAND'S at 1409.

another individual who would provide a copy of the medical records upon request. *Id.* at 1 n.1.

In January and February 2019, Petitioner filed her benefits statement and medical records from Dr. Morales and two other providers. Exhibits 12-16, ECF Nos. 14-16. The medical records show Petitioner visited Dr. Morales on May 13, 2014, complaining of worsening pain in her knee, left shoulder, and back and swelling in her knee since her 2010 car accident. Exhibit 14 at 7. She described her left shoulder pain as shooting down her arm. *Id.* Dr. Morales diagnosed Petitioner with tendinitis in her left shoulder and mild tendinitis in her left knee, prescribed PT, and administered a cortisone injection in her left shoulder. *Id.* at 13-14. At her first PT session on May 20, 2014 at Seaview Orthopaedic & Medical Associates (Seaview Orthopaedic"), Petitioner indicated she was on temporary disability for her left shoulder pain which she had experienced "on and off for years." *Id.* at 16. She rated her current pain at six on a scale of ten. *Id.*

After receiving subpoena authority, Petitioner obtained her disability records from the Social Security Administration. Exhibit 17, filed Mar. 25, 2019, ECF No. 21. The same day, she filed medical records from additional PT sessions she attended at Seaview Orthopaedic in May and early June 2014. Exhibit 18, ECF No. 22. These records provided additional evidence of Petitioner's long term back, left shoulder, and knee issues. The disability records revealed Petitioner's left shoulder pain was one of the bases for her claim filed in early 2011 and recertified in late 2014. *E.g.*, Exhibit 17 at 25-27 (initial application for disability in January 2011), 237-244 (recertification application). When applying for recertification in late 2014, Petitioner indicated she continued to experience daily pain in her back, left shoulder, and left leg. *Id.* at 244.

In June 2019, Respondent filed a status report indicating he was opposed to compensation in this case. ECF No. 24. Approximately one month later, he filed his Rule 4(c) Report setting forth his specific objections. ECF No. 26. During a telephonic status conference on August 20, 2019, Petitioner's counsel indicated Petitioner was willing to dismiss her claim. *See* Order, issued Aug. 22, 2018, ECF No. 27. She filed her motion, and a decision dismissing the case was issued in early October 2019.

## II.    The Parties' Arguments

In his response to Petitioner's motion for attorney's fees and costs, Respondent asserts that the case lacked reasonable basis, and also was not filed in good faith, and therefore no fees should be awarded. Opp. at 1-2, 15. Regarding reasonable basis, Respondent argues that "Petitioner's records clearly demonstrate that [she] had

4

symptoms of prior left shoulder dysfunction, and there is no evidence that her condition resolved prior to her alleged vaccine injury." *Id.* at 12-13. He adds that "Petitioner's records also make clear that she is unable to establish that her left shoulder pain began within 48 hours of vaccine administration." *Id.* at 13.

Respondent also questions whether the claim was advanced in good faith, arguing that Petitioner's affidavit stating she had no history of prior shoulder injuries was simply untrue. Opp. at 13. In support, Respondent notes that "petitioner's counsel have a duty to investigate the claim, including an obligation to 'review thoroughly' the records filed in support of a vaccine petition." *Id.* at 14 (quoting *Crowding v. Sec'y of Health & Human Servs.,* No. 16-876V, 2019 WL 1332797, at *10 (Fed. Cl. Spec. Mstr. Feb. 26, 2019) (citing *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017)). He argues that Petitioner's counsel had notice that further investigation regarding Petitioner's prior left shoulder pain was needed before the Petition was filed. Despite what he characterizes as a failure on the part of Petitioner's counsel, Respondent argues that "[P]etitioner's own misrepresentations of her pre-vaccine medical history undermine any assertions that her claim was filed in good faith." Opp. at 15.

In reacting to such arguments in her reply, Petitioner stresses Congress's desire to provide Vaccine Program claimants with counsel by allowing an award of attorney's fees and costs even in unsuccessful cases. Petitioner's Reply to Opp. to Motion ("Reply"), filed Jan. 21, 2020, at 1-2, ECF No. 40. The records Petitioner "was in possession of at the time of filing revealed a factual basis to support a feasible claim, [and] [s]he proceeded under the belief that the representations made by Petitioner were made to her in good faith." *Id.* at 10. Petitioner also emphasizes that "[w]hen presented with evidence that did not support a vaccine injury, she took action to withdraw the petition." *Id.*

Regarding her argument that reasonable basis existed at the time the Petition was filed, Ms Skwiat asserts that "[t]he records collection was in conformity with the common collection practice <u>at the time</u>, which included collection of Petitioner's primary care records (3) three years prior to vaccination, and all providers the Petitioner treated with for her alleged SIRVA injury." Reply at 5 (emphasis in original). She maintains that it was not common practice to obtain a benefits statement, and she "was not made aware that Petitioner was under the care of additional orthopedists until she reviewed Petitioner's Medicare Claims." *Id.* at 7. Additionally, she stresses that she was not able to obtain Petitioner's Social Security Disability records until Petitioner's request for subpoena authority was granted. *Id.*

Although the medical records from Petitioner's PCP contained references in 2014 to prior left shoulder pain, Petitioner's counsel emphasizes that during two appointments

in 2015, prior to vaccination, Petitioner did not mention any shoulder pain. Reply at 5 (citing Exhibit 2 at 10-13). She also claims Petitioner complained of left shoulder pain, and was instructed to take anti-inflammatories on January 15, 2016, approximately two months after vaccination. Reply (citing Exhibit 6 at ¶ 5 (Petitioner's affidavit) and Exhibit 2 at 7-9[5] (record from January 15, 2016 visit)). Thus, Petitioner insists that when the Petition was filed, her claim "was supported by both medical records *and* medical opinion." *Id.* at 8.

Asserting that the petition was filed in good faith, Petitioner's counsel equates her circumstances to those of Petitioner's treating doctors, emphasizing that Petitioner did not inform counsel of her prior shoulder issues, actively representing that she had no previous issues and that the onset of her left shoulder pain occurred shortly after vaccination. Reply at 9-10. She also claims the medical records initially filed supported Petitioner's assertions, and she believed there was sufficient evidence to support Petitioner's claim until she reviewed the Social Security Disability records, Dr. Morales's medical records, and the PT records from Seaview Orthopaedic. *Id.* at 10 (citing Exhibits 14, 17-18). She therefore maintains a fees award is justified.

### III. Legal Standard for Attorney's Fees and Costs in Unsuccessful Cases

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorneys' fees and costs may be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013) (discussing this goal when determining that attorney's fees and costs may be awarded even when the petition was untimely filed). However, "Congress did not intend that every losing petition be automatically entitled to attorneys' fees." *Perriera v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994).

Under the Vaccine Act, an unsuccessful petitioner *may* be awarded attorney's fees and costs if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). "[T]he statute clearly gives [the special master] discretion over whether to make such an award." *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed.Cir.1993). Thus, the Federal Circuit reviews these decisions "under a highly deferential standard [and will] not disturb the judgment of the court unless [the Circuit] find that judgment to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Perriera*, 33 F.3d at 1376

---

[5] It is important to note that I could not find any reference to a complaint of left shoulder pain or instructions to take anti-inflammatories in this record.

6

(quoting *Munn v. Sec'y of Health & Human Servs.*, 970 F.2d 863, 870 (Fed.Cir.1992)); *accord. Simmons*, 875 F.3d at 635; *Saxton,* 3 F.3d at 1519.

"The 'good faith' and 'reasonable basis' factors are distinct; the former is subjective while the latter is objective." *Amankwaa v. Sec'y of Health & Human Servs.,* 138 Fed. Cl. 282, 286 (2018) (citing *Simmons*, 875 F.3d at 635).

### IV.  Analysis

Although (and as set forth below) I have concerns about both elements required to justify a fees award in an unsuccessful case like the present, I will begin out of order and first consider whether objective reasonable basis existed for the claim.

#### A.  Reasonable Basis

Reasonable basis must be affirmatively demonstrated by the petitioner. *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 305 (2011). "In contrast to the subjective standard afforded the 'good faith' requirement, the 'reasonable basis' requirement 'is objective, looking not at the likelihood of success [of a claim] but more to the feasibility of the claim.'" *Turner v. Sec'y of Health & Human Servs.*, No. 99-0544V, 2007 WL 4410030, at *6 (Fed. Cl. Spec. Mstr. Nov. 30, 2007) (quoting *Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). In short, a petitioner must demonstrate the claim's reasonable basis through some objective evidentiary showing. *Chuisano v. Sec'y of Health & Human Servs.,* 116 Fed. Cl. 276, 286 (2014) (citing *McKellar,* 101 Fed. Cl. at 303). The standard for reasonable basis is lesser (and inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases with reasonable basis (because they have objective proof supporting the claim) can nevertheless still fail to establish causation-in-fact. *Braun v. Sec'y of Health & Human Servs.,* 144 Fed. Cl. 72, 77-78 (Fed. Cl. 2019).

Examining the entire record, including the documentation obtained by subpoena from the Social Security Administration, it is clear that Petitioner's claim was not feasible, as revealed by ample records and evidence. The subpoenaed materials in particular demonstrate that Petitioner received disability payments based on her back, left shoulder, and left knee pain from early 2011. When requesting recertification in late 2014, she indicated she experienced daily pain. This is not a claim that would have succeeded, and records from prior to its filings made that fact plain.

7

Admittedly, the question whether reasonable basis existed *before* these subpoenaed records were obtained becomes more difficult if the inquiry is limited to evidence in the medical records that were available to counsel as of the case's filing. A special master may determine that reasonable basis existed at the time a petition was filed, but was later lost as new evidence became available. *Chuisano*, 116 Fed. Cl. at 288 (citing *Perreira*, 33 F.3d at 1377). However, as the Federal Circuit established in *Simmons*, determining whether reasonable basis exists "is an objective inquiry unrelated to counsel's conduct." *Simmons,* 875 F.3d at 636.

Here, there is ample evidence in the medical records obtained without subpoena to show that Petitioner was not likely to succeed. Petitioner's PCP records establish that she suffered from chronic back, left shoulder, and left knee pain since a motor vehicle accident in 2010, received treatment from her PCP on several occasions in 2014 for left shoulder pain, saw an orthopedist and physical therapist during this time, and received disability payments for her condition from at least early 2014. The medical records from the orthopedist Petitioner visited in 2014 and the PT undergone during that time provide evidence that Petitioner's prior left shoulder pain was significant.[6] Additionally, the medical records from Petitioner's PCP contain evidence which contradicts Petitioner's assertion that she was suffering from additional or different left shoulder pain attributed to her vaccination in January 2016. Petitioner's counsel had a duty to inquire about these multiple issues raised in the medical records obtained without subpoena.

### B. Good Faith

Also relevant to my analysis is whether this claim was in fact filed in "good faith." Here, and in addition to the lack of objective reasonable basis, I find that the Petitioner's own good faith has reasonably been called into question, given the disparity between her sworn statements and the record. In fact, a denial of fees would be justified on this grounds alone.

"Petitioners are entitled to a presumption of good faith as is the government." *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996). A special master is thus justified in presuming good faith "in the absence of direct evidence of bad faith." *Grice*, 36 Fed. Cl. at 121. However, and as stated in previous decisions, the term "good faith" is not defined in the Vaccine Act, and the legislative history provides no helpful context. *See,* e.g., *Turner*, 2007 WL 4410030, at *4. Thus, the term's plain meaning, as provided by definitions from legal dictionaries or case law, is the basis for understanding "good faith"

---

[6] On May 20, 2014, approximately one week after receiving a cortisone injection from her orthopedist Dr. Morales, Petitioner still rated the level of her left shoulder pain as six out of ten. Exhibit 14 at 13-14, 16.

in the Vaccine Program. *Id.*; *Crowding v. Sec'y of Health & Human Servs.,* No. 16-876V, 2019 WL 1332797, at *9 (Fed. Cl. Spec. Mstr. Feb. 26, 2019).

Black's Law Dictionary defines good faith as a "state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one's duty or obligation, (3) observance of reasonable commercial standards of fair dealing in a given trade or business, or (4) absence of intent to defraud or to seek unconscionable advantage." Black's Law Dictionary (11th ed. 2019). The converse, bad faith, involves conduct indicating "dishonesty of belief, purpose, or motive." *Id.*

Similarly, the Vaccine Act does not specify whether it is petitioner or her counsel who must possess the requisite good faith. In this case, Petitioner's counsel appears to assert the latter, focusing on counsel's lack of knowledge regarding Petitioner's prior left shoulder pain. Reply at 9-10. Respondent argues the former, maintaining that Petitioner's untrue statements constitute a lack of good faith. Opp. at 13. However, Respondent also takes note of counsel's failure to fulfill her duty to thoroughly review the medical records and adequately investigate Petitioner's claim. *Id.* at 14.

While discussions in fees decisions regarding the existence of good faith may include references to the actions of counsel, most decisions of the special masters relevant to the issue focus on the knowledge and actions of the *petitioner* when determining if good faith exists.[7] Indeed, the good faith requirement has been described as "a subjective standard that focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner,* 2007 WL 4410030, at *5. I recently found that a claim lacked good faith due to petitioner's knowledge of prior shoulder pain and "material alterations and omissions misrepresenting onset" found in medical records she presented to her counsel. *Purnell-Reid v. Sec'y of Health & Human Servs.,* No. 18-1101V, 2020 WL 2203712, at *7 (Fed. Cl. Spec. Mstr. Apr. 6, 2020).

Like the petitioner in *Purnell-Reid,* the Petitioner in this case suffered prior shoulder pain which had not resolved by the time she received the vaccination alleged as causal.

---

[7] In a 1991 decision, the special master theorized that, had a determination regarding good faith been required, it would be logical to assume it was the good faith of counsel that was most relevant. *O'Dell v. Sec'y of Health & Human Servs.*, No. 89-42V, 1991 WL 123581, at *1, 1 n.2 (Fed. Cl. Spec. Mstr. June 19, 1991). Later decisions, however, have focused on a claimant's subjective belief and actions. In a 2008 decision, for example, the special master determined the petitioner "did not act in good faith in bringing his petition" because he had been informed by petitioner's counsel that an expert could not be found to support his claim and the statute of limitations had expired four days ago, but the petitioner persisted in pursuing the claim. *Moran v. Sec'y of Health & Human Servs.*, No. 07-0363V, 2008 WL 8627380, at *7 (Fed. Cl. Spec. Mstr. Dec. 12, 2008). In a decision several years later in which good faith was found, the special master again focused primarily on the belief and actions of petitioner. *Heath v. Sec'y of Health & Human Servs.*, No. 08-0086V, 2011 WL 4433646, at *3-8 (Fed. Cl. Spec. Mstr. Aug. 25, 2011).

9

In this case, Petitioner's left shoulder pain began after a motor vehicle accident in 2010 and continued until vaccination on November 3, 2015. In early 2011, Petitioner applied for Social Security Disability due to her back, left shoulder and knee pain. She received a cortisone injection in her left shoulder on May 13, 2014 and underwent PT during May and early June 2014. When she sought recertification of her claim in December 2014, Petitioner indicated she experienced daily pain in her back, left shoulder, and left knee. Petitioner's counsel stresses that Petitioner did not complain of left shoulder pain during two visits to her PCP in 2015, prior to vaccination. However, the records from those visits clearly indicate Petitioner continue to suffer from back pain attributed to her 2010 car accident and to receive disability payments.

Despite this history of left shoulder pain, Petitioner signed an affidavit which indicated she "had no history of shoulder injuries" on June 12, 2018. Exhibit 6 at ¶ 3. She also failed to report her earlier left shoulder pain to the orthopedist and physical therapist treating the left shoulder pain she experienced in 2016. According to Petitioner's counsel, Petitioner failed to inform her of the prior shoulder issues and actively represented that she had no previous issues. Reply at 9. I find there is sufficient evidence of bad faith on the part of Petitioner to establish that an award of fees is not warranted.[8]

### V.    Conclusion

For the reasons stated above, I conclude that Petitioner has failed to establish that she filed her petition in good faith, and/or that the claim possessed reasonable basis. **I therefore find that Petitioner is not entitled to an award of attorney's fees and costs. Petitioner's motion is DENIED.**

---

[8] I note that some case law suggests counsel's conduct also bears on the good faith analysis. *See,* e.g., *Simmons*, 875 F.3d at 636 (an impending statute of limitations deadline does not provide a reasonable basis which would otherwise be lacking but "may relate to whether the petition was brought in good faith by counsel"); *Amankwaa*, 138 Fed. Cl. at 289. At a minimum, there was evidence in the medical records filed with this Petition that should have alerted counsel to Petitioner's prior left shoulder pain and the need to obtain the medical records from the orthopedic treatment and PT she underwent in 2014 and documentation related to her disability payments. Exhibit 2 at 16, 19-20. Although subpoena authority was required to obtain the later, the orthopedic and PT records from 2014 were gathered without this authority.

However, the primary good faith issues in this case are raised by the disparity between Petitioner's sworn statements and the facts. While counsel could have been more diligent in ascertaining whether objective proof supported the claim at the time of its filing, I do not find that such a lack of diligence constitutes additional "bad faith," in the absence of affirmative evidence that counsel pursued the claim despite knowledge that it was objectively baseless. As I stated in *Purnell-Reid*, "I am reluctant to equate attorney negligence in performing his or her duties with bad faith (which implies acting with *actual knowledge* that materials necessary to support a claim exist and are contrary to the claim." *Purnell-Reid,* 2020 WL 2203712, at *8.

The Clerk of the Court is directed to enter judgment in accordance with this decision.[9]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[9] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.